[No. B088549. Second Dist., Div. Five. Aug. 13, 1996.]

LAURA SELLERY et al., Plaintiffs and Appellants, v.
DAVID CRESSEY et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

\*Parts I.B., I.C., and II. of the Discussion of this opinion are not certified for publication. (See Cal. Rules of Court, rules 976(b) and 976.1.)

## COUNSEL

Allred, Maroko & Goldberg and Lisa Bloom for Plaintiffs and Appellants.

Solis Cooperson for Defendants and Appellants.

## OPINION

**GODOY PEREZ, J.**—Appellants Laura and David Sellery (Laura and David) appeal summary judgment dismissing her claims for battery, assault, and intentional infliction of emotional distress, and his claim for loss of consortium, against Laura's parents, respondents David and Donna Cressey (the Cresseys). Attempting to defend the judgment in their favor, the Cresseys cross-appeal on the grounds there are additional reasons, which the trial court did not reach, for granting summary judgment. After review, we reverse the dismissal of Laura's claims, and affirm the dismissal of David's.

## PROCEDURAL AND FACTUAL BACKGROUND[1]

Laura Sellery was born on May 15, 1955. On March 15, 1984, she married David. The Cresseys, Laura's parents, are apparently now deceased.[2]

On August 11, 1992, Laura and David sued her parents for battery, assault, intentional infliction of emotional distress, and loss of consortium.[3] The complaint alleged the Cresseys "sexually, physically, and emotionally" abused Laura when she was a child. It alleged that David Cressey, Laura's father, did the following: "a. kiss[ed] . . . Laura['s] . . . mouth and insert-[ed] his tongue into her mouth; b. requir[ed] . . . Laura . . . to dance naked before him while he leered at her; c. perform[ed] cunnilingus on . . . Laura . . . ; d. requir[ed] . . . Laura . . . to perform fellatio upon him; e. masturbat[ed] in the presence of . . . Laura . . . ; f. engag[ed] in sexual acts with . . . Laura['s minor] sister . . . in Laura['s] presence; g. touch[ed] and grabb[ed] . . . Laura['s] . . . breasts, buttocks and genitals; h. rubb[ed] his hands over . . . Laura['s] . . . buttocks and push[ed] his fingers into her vagina; i. forc[ed] . . . Laura . . . to touch and fondle his penis; j. rubb[ed] his penis against her body; k. vaginal intercourse [which resulted in preg-nancy and abortion at the age of 12]; and l. sodomy." The complaint further alleged that Laura's mother, Donna Cressey, "fondl[ed] . . . Laura's . . . pubic area; forc[ed] . . . Laura . . . to perform cunnilingus upon [her]; and insert[ed] objects into . . . Laura['s] . . . vagina and rectum."

David's claim for loss of consortium, which was his only cause of action, alleged that Laura's injuries from her parents' abuse strained their marriage, depriving him of her support and services, including her "love, companion-ship, affection, society, sexual relations, and solace . . . ."

---

[1]We state the facts, and all the inferences that may reasonably be drawn from them, in the light most favorable to appellants, the parties who opposed summary judgment. (*Krongos* v. *Pacific Gas & Electric Co.* (1992) 7 Cal.App.4th 387, 390, fn. 1 [9 Cal.Rptr.2d 124]; *Sosinsky* v. *Grant* (1992) 6 Cal.App.4th 1548, 1556 [8 Cal.Rptr.2d 552].)

[2]We say "apparently deceased" because the only reference to their deaths is a single, passing reference in respondents' reply brief, unsupported by any citation to the record, which states, "the persons accused of abusing the Appellant are today now dead." (See 4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 283, pp. 338-339 ["Failure to substitute [a dece-dent's personal representative or successor in interest] is merely a procedural irregularity, not an act in excess of jurisdiction."].) We note, however, for the benefit of the trial court and parties upon remand, the existence of statutory provisions addressing the possible need for substitution by the Cresseys' personal representatives or successors in interest, and the unavailability of punitive damages. (See, e.g., Code Civ. Proc., § 377.41 [court shall allow upon proper motion substitution of decedent's personal representative or successor in inter-est]; Code Civ. Proc., § 377.50 [substitution not necessary if decedent had liability insurance]; Code Civ. Proc., § 377.42 [punitive damages not recoverable from decedent's estate].)

[3]There was also a cause of action for negligence, but it was dismissed by stipulation.

Laura acknowledged that she never forgot certain events, such as her father's requiring her to dance naked before him, grabbing her breasts and buttocks, and attempting intercourse, but claimed she repressed all memory of the most profound abuse, such as engaging in intercourse, sodomy, and oral sex, until she entered psychotherapy in 1991 for treatment of depression, dissociation, and sexual dysfunction. It was through therapy, Laura contends, that her worst memories resurfaced and that she came to realize that her psychological ailments were caused by the abuse.

As Laura explained: "I have always remembered some acts of abuse as described in my complaint . . . . [¶] . . . However, I did not remember how I felt when my father did these things, nor did I begin to realize the wrongfulness of his actions, or the effects these incidents had on my adult psychological well-being, until 1991. . . ."

David echoed Laura's testimony, describing her visceral reaction to her memories: "I have been with my wife when some of these memories have emerged in her, suddenly, with no apparent provocation. They have come upon her in our home and other places. This remembering is not a mental musing about her distant past, but rather an intense emotional and often physical reliving of a past act of abuse. . . . [¶] . . . . [¶] It has been heartbreaking to see such bottomless grief, fear, shame and at times despair, as Laura becomes overwhelmed week after week with the remembered experiences of her parents' abuse of her. Certainly it was not until 1991 that Laura ever began to appreciate the wrongfulness of her parents' child sexual abuse of her, and it was not until 1991 that Laura began to discover how that child sexual abuse caused her emotional pain and injuries in her adulthood."

Laura's psychological expert, Dr. Judith Armstrong, explained that Laura's failure to see the connection between the abuse and her psychological problems was due to the phenomenon of "dissociation," which she defined as "a spontaneously occurring alteration in a person's state of awareness [which makes that person] unable to connect the different elements of the event she or he is experiencing, and therefore, is unable to form a coherent, cohesive memory of the experience." Constructing a simile out of a well-known story, Armstrong stated "[d]issociation of memory and experience is like the fable of the blind men, each of whom touches a different part of the elephant, and therefore describes the animal completely differently. In a similar manner, because of the dissociation of her childhood trauma, until recently [Laura] saw her abuse in unconnected segments. She was unable to truly appreciate the significance of these memories and therefore, unable to act on them and make decisions about them." Because of Laura's dissociation, Armstrong and Laura's psychotherapist, Donna Runnals, agreed that

until Laura had entered therapy, she had not appreciated the wrongfulness of the abuse nor connected it to her current psychological problems.

In July 1994, the Cresseys moved for summary judgment on multiple grounds. They argued that (1) the statute of limitations barred Laura's and David's claims, (2) David failed to state a cause of action, (3) Laura's testimony was inadmissible because she had been "hypnotised and/or received therapy," and (4) there was no independent corroboration of Laura's testimony. After a hearing, the court found that Laura's claims were time barred "by reason of her admitted conscious memory of torts committed as to her during her minority" under Code of Civil Procedure section 340.1, which provided a three-year statute of limitation after Laura discovered, or should have discovered, her injuries were caused by sexual abuse. It also found that David failed to state a cause of action, and even if he did, it was time barred for the same reasons Laura's claims were.[4] The court did not rule, however, on the hypnosis and therapy or independent corroboration issues. The court thereafter entered judgment for the Cresseys and dismissed the case.[5] This appeal and cross-appeal followed.

## STANDARD OF REVIEW

■ Summary judgment is proper only when a moving party establishes the right to entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) In reviewing an order granting summary judgment, we must assume the role of the trial court and redetermine the merits of the motion. In doing so, we strictly scrutinize the moving party's papers, and construe the facts and resolve all doubts and ambiguities in the evidence as to whether any triable issue of material fact exists, in favor of appellants, the parties who opposed the motion. (*Krongos* v. *Pacific Gas & Electric Co., supra*, 7 Cal.App.4th at p. 390, fn. 1; *Sosinsky* v. *Grant, supra*, 6 Cal.App.4th at p. 1556.) While we must review a summary judgment motion by the same standards as the trial court, we independently determine as a matter of law the construction and effect of the facts presented. (*Saldana* v. *Globe-Weis Systems Co.* (1991) 233 Cal.App.3d 1505, 1510-1511, 1513-1515 [285 Cal.Rptr. 385].)

---

[4]The Cresseys note that Laura and David were late in filing their separate statement of disputed and undisputed facts. Nothing suggests, however, that this tardiness had anything to do with the granting of summary judgment.

[5]The judgment is not in the record, but there is no dispute it was entered and the case dismissed.

## DISCUSSION

### I. *Laura and David's Appeal*

#### A. *Laura's Claims Are Not Time-barred*

■ The trial court found that Laura's claims were time-barred under the version of Code of Civil Procedure section 340.1 (hereafter section 340.1) then in effect because she had never forgotten some of the incidents of sexual abuse.[6] When Laura filed her complaint in 1992, that section provided: "In any civil action for recovery of damages suffered as a result of childhood sexual abuse, the time for commencement of the action shall be within eight years of the date the plaintiff attains the age of majority *or within three years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual abuse*, whichever occurs later." (Italics added.) (Stats. 1990, ch. 1578, § 1, p. 7550.)[7] The court contrasted Laura's partial recollection with that of abuse victims who completely repress all memory of their abuse until years later. The court reasoned that because Laura remembered some of the abuse, there was no basis for applying delayed discovery principles to her claims. Accordingly, the court held her causes of action had expired when she turned 26 (i.e., 8 years after reaching the age of majority). As we explain below, this was error.

Before the enactment of section 340.1 in 1986, there was no statute of limitations specific to causes of action for childhood sexual abuse. Typically, courts applied Code of Civil Procedure section 340, which provided a one-year statute of limitation, and Code of Civil Procedure section 352, which tolled the running of the statute while the plaintiff was a minor, to claims by adults of childhood sexual abuse. (See, e.g., *DeRose* v. *Carswell* (1987) 196 Cal.App.3d 1011, 1015 [242 Cal.Rptr. 368].) To establish delayed discovery, which would toll the statute of limitations beyond a plaintiff's 19th birthday (which, under the interplay of sections 340 and 352, was the last day a complaint could ordinarily be filed), adult plaintiffs had to show they had no memory of the facts essential to their claim. (196 Cal.App.3d at p. 1018.) One court suggested in *DeRose* v. *Carswell, supra,* that tolling therefore occurred, as a practical matter, only in cases of completely repressed memory where the plaintiff did not remember any of

---

[6]As we discuss, *post,* section 340.1 was enacted in 1986, and amended in 1990 and 1994. (Stats. 1986, ch. 914, § 1, pp. 3165-3166; Stats. 1990, ch. 1578, § 1, pp. 7550-7552; Stats. 1994, ch. 288, § 1.)

[7]The 1994 amendments changed the phrase "whichever occurs later," to "whichever period expires later," but did not otherwise alter the quoted portion of section 340.1. (Compare Stats. 1990, ch. 1578, § 1, pp. 7550-7552 with Stats. 1994, ch. 288, § 1.) Hence, our analysis, *post,* of the proper interpretation of section 340.1 applies to both the pre- and post-1994 versions of the statute.

the abuse until years afterwards. (*Ibid.* ["If [the plaintiff] could and did allege that she repressed her memories of the sexual assaults until one year before filing her complaint, she might be able to invoke the delayed discovery rule."].) A corollary rule, the *DeRose* court suggested, was that delayed discovery did not apply to a plaintiff who had simply not "recognized [the] connection" between the abuse and later emotional harm if the plaintiff otherwise recalled the abuse. (*Id.* at pp. 1017-1018 [rejecting argument that the "cause of action did not accrue until [the plaintiff] experienced later emotional harm and recognized its connection with the earlier assaults"].)

In 1986, the Legislature enacted section 340.1, which provided that " [i]n any civil action for injury or illness based upon [certain defined acts of sexual abuse] in which this conduct is alleged to have occurred between a . . . family member and a child where the act upon which the action is based occurred before the plaintiff attained the age of 18 years, the time for commencement of the action shall be three years." (Stats. 1986, ch. 914, § 1, p. 3165.) ▮ After the passage of section 340.1, courts began to adopt a more liberal view of delayed discovery in sexual abuse cases, holding that even if the plaintiff recalled the abuse itself, the statute of limitations tolled until the plaintiff appreciated its "wrongfulness." (*Evans* v. *Eckelman* (1990) 216 Cal.App.3d 1609, 1618-1619 [265 Cal.Rptr. 605]; *Marsha* v. *Gardner* (1991) 231 Cal.App.3d 265, 271 [281 Cal.Rptr. 473].) One such court noted: "It has been widely recognized that the shock and confusion engendered by parental molestation, together with the parent's demands for secrecy, may lead a child to deny or block the traumatic events from conscious memory, or to turn the anger and pain inward so that the child blames himself or herself for the events. [Citations.] Even where memory of the events themselves is not suppressed, it may be some time before the victim can face the full impact of the acts. [Citations.] . . . . [¶] Because of the youth and ignorance of the victims, as well as the unique duties and authority held by the parent, child sexual abuse by a parent or parental figure may in some cases be as effectively concealed from the victim as an underground trespass, a foreign object left in the body after surgery, or the abstruse errors made by a hired professional." (*Evans* v. *Eckelman, supra,* 216 Cal.App.3d at pp. 1615-1616.) Although such decisions relaxed the strict rule that any memory of the abuse precluded finding delayed discovery, they continued to reject the argument that the plaintiff's failure to see the connection between the abuse and his or her current psychological problems justified tolling the statute of limitations. As one court stated: "Unless awareness of the acts is immediately suppressed the plaintiff would necessarily be aware of the injury, and the hidden nature of the full damage would not bring the delayed accrual rule into play." (*Id.* at p. 1620.)

▮ In 1990, the Legislature amended section 340.1 to allow tolling of the statute of limitations until the plaintiff discovered, or should have

discovered, the connection between the abuse and current injuries. As amended, section 340.1 provided, in part, "In any civil action for recovery of damages suffered as a result of childhood sexual abuse, the time of commencement of the action shall be within eight years of the date the plaintiff attains the age of majority or within three years of the date the plaintiff *discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual abuse*, whichever occurs later." (§ 340.1; Stats. 1990, ch. 1578, § 1, p. 7550.) (Italics added.)

The amendment's legislative history establishes it was intended to toll the statute of limitations even for plaintiffs who recalled their abuse. For example, the analysis by the Senate Judiciary Committee noted that "[t]he [amendment's] proponents contend that it is well documented that most victims of childhood sexual abuse either repress their memories of the abuse or are unable to appreciate their injuries until well into their adult years. An extension of time to sue until the victim's twenty sixth birthday, coupled with the possibility of showing justifiable delay thereafter, is based on current psychological studies on the hidden long-term effects of such abuse."

The Assembly Judiciary Committee's analysis concurred. In explaining the amendment's purpose, it specifically cited *DeRose* v. *Carswell, supra,* 196 Cal.App.3d 1011, as an example of where "California appellate courts have refused to apply the delayed discovery doctrine to causes of action based on childhood sexual abuse where the plaintiff alleges that he or she remembers the childhood sexual abuse, but only recently became aware of the resulting injuries. . . ." Describing then current law as providing that the statute of limitations began running when the plaintiff discovered, or should have discovered, "all the facts which are essential to the cause of action," the analysis noted that the amendment changed the law so that the statute started running when the plaintiff "discovers or . . . should have discovered *that the psychological injury or illness occurring after majority was caused by the abuse* . . . ." (Italics added.)

Finally, in seeking the Governor's approval of the bill, the amendment's author wrote: "[The bill] would more clearly define the delayed discovery provisions to provide for a cause of action for survivors of childhood sexual abuse beyond their 26th birthday, if they could prove that *they recently discovered that the abuse they suffered as a child cause[d] the injuries that they are now experiencing.* [¶] A survivor of childhood sexual abuse often lacks the means or ability to ascertain his or her injuries and their cause within the traditional limitations period. Many victims of childhood sexual abuse have repressed all memory of the abuse for many years or, *if they do remember the abuse, they minimize or deny its effects to the extent that they do*

*not connect the abuse with later injuries. Generally, it is only when an adult survivor of sexual abuse enters therapy that any meaningful understanding of his or her injuries can be developed.* This legislation will provide childhood sexual abuse survivors with an opportunity to bring civil actions to recover damages for injuries resulting from the abuse." (Italics added.)

Although it did not examine the legislative history of section 340.1, the recent decision in *Lent* v. *Doe* (1995) 40 Cal.App.4th 1177 [47 Cal.Rptr.2d 389], supports our analysis. There, the plaintiff, a 31-year-old man, admitted he had never forgotten the sexual abuse he suffered as a minor, but alleged he "did not discover the connection between [his psychological] illness and the acts of [abuse] until he began counseling . . . ." (*Id.* at pp. 1185-1186.) The defendant argued the plaintiff's uninterrupted memory barred application of delayed discovery. (*Id.* at p. 1185.) In rejecting that argument, the court held "[n]othing in section 340.1 requires that memories of abuse be repressed as a prerequisite to a delayed discovery claim. [¶] To the contrary, to satisfy delayed discovery plaintiff need only allege the onset of psychological injury or illness after the age of majority and that he commenced his action within three years of the time he discovered or reasonably should have discovered such psychological injury or illness was caused by the childhood sexual abuse." (*Id.* at p. 1186.)

■ We now turn to the facts before us and apply the principles we have discussed. Upon doing so, we note that Laura claims she first saw the connection between her current psychological ailments and her abuse when she entered therapy in 1991. Accepting this claim as true, we hold that her lawsuit was timely when filed in 1992, and therefore its dismissal was error. (See § 340.1 [complaint timely if filed within three years of discovery].)

The Cresseys' primary argument in defense of the judgment below is that the statute of limitations was never tolled, and therefore Laura's complaint was time-barred, because she always remembered some instances of abuse. As our analysis of section 340.1 makes clear, this argument is unavailing because total repression of all memory of the abuse is not necessary to toll the statute.

The Cresseys further contend Laura's complaint was time-barred after 1987 because the psychological problems for which she ultimately sought treatment started surfacing in 1984, which, according to them, started the running of the three-year period during which she *should* have discovered the connection between her problems and the abuse. Laura offered expert psychological testimony, however, showing that she had used various defense mechanisms, such as "dissociation, rationalization, and an extreme

process of self-blaming and self-shaming as a defense against having full and conscious awareness of the ways in which such abuse had damaged her as an adult . . . ." Another expert testified that until therapy, Laura experienced the psychological phenomenon of "dissociation" by which she "saw her abuse in unconnected segments [making her] unable to truly appreciate the significance of these memories [of abuse] and therefore, unable to act on them and make decisions about them." This expert opined that Laura's "use of dissociation as a defense against fully understanding and remembering this abuse prevented her, until her recent therapeutic work beginning in 1991, from . . . connecting that abuse with her present psychological injuries." We find that such expert testimony created a triable issue of fact as to the time when Laura should have discovered the connection between her abuse and injuries, making summary judgment improper. (See *Lent v. Doe*, *supra*, 40 Cal.App.4th at p. 1186 [failure to discover connection sooner was justified by plaintiff's age and his trusting relationship with abuser, which caused plaintiff to "internalize feelings of shame and self-blame while blocking out and dissociating from those feelings, rendering him unable to perceive the injurious nature" of the abuse].)

B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II.   *The Cresseys' Cross-appeal**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment as to Laura Sellery is reversed and the trial court is directed to enter a new and different order denying summary judgment of her claims for battery, assault, and intentional infliction of emotional distress. The judgment is affirmed as to David Sellery. Each side to bear its own costs on appeal.

Turner, P. J., and Armstrong, J., concurred.

On September 3, 1996, the opinion was modified to read as printed above.

---

*See footnote, *ante*, page 538.