924 P.2d 196

**Sandra DUNLEA, Plaintiff–Appellant,**

**v.**

**Howard DAPPEN, Defendant-Appellee,**

**and**

**John Doe Natural Persons 1–10; John Doe Corporate Entities 1–10; John Doe Governmental Entities 1–10; John Doe Partnerships 1–10; John Doe Joint Ventures 1–10, Defendants.**

**No. 18614.**

Supreme Court of Hawai'i.

Sept. 19, 1996.

C. Bryan Fitzgerald, Hilo, for plaintiff-appellant Sandra Dunlea.

Roy F. Hughes and Deborah S. Jackson, Honolulu, for defendant-appellee Howard Dappen.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

## OPINION

MOON, Chief Justice.

Plaintiff-appellant Sandra Dunlea appeals from the circuit court's: (1) July 27, 1993 order granting defendant-appellee Howard Dappen's motion to dismiss her claim of childhood sexual abuse (CSA) with prejudice on the basis that the claim was barred by the statute of limitations; (2) February 9, 1994 order granting Dappen's motion for summary judgment with respect to Dunlea's claims of defamation and intentional and/or negligent infliction of emotional distress; and (3) October 31, 1994 final judgment in favor of Dappen. Dunlea also appeals from certain of the circuit court's rulings regarding discovery matters.

For the reasons discussed below, we: (1) vacate the circuit court's order dismissing Dunlea's claim of CSA and remand this case for trial on the CSA claim; (2) affirm the order granting summary judgment in favor of Dappen on Dunlea's defamation and negligent and intentional infliction of emotional distress claims. Because we are remanding this case for trial, we also provide guidance with respect to the discovery matters.

## I. BACKGROUND

Dunlea, who was born in 1947, alleges that she was the victim of incestuous rape at the hands of her natural father, Dappen. She has direct and detailed memory of sexual assaults that occurred between 1961 and 1964, when she was between the ages of fourteen and seventeen years old, while living with her father in Ventura, California. She also alleges memories, beginning at age five, of heinous assaults by a faceless attacker whom she now realizes was Dappen.

In 1964, Dunlea reported the incestuous rape to a California Highway Patrolman. After an investigation, she was removed from Dappen's custody and placed in a foster home. Dappen, apparently, was never prosecuted.

In 1991, Dappen told Dunlea's sister that he was still angry with Dunlea and would never forgive her for what happened in 1964. When the statement was repeated to Dunlea, it triggered a severe emotional reaction because Dunlea had interpreted her father's statement as blaming her for falsely accusing him of incest. One week later, she called Dappen at his Maui residence to confront him about the statement. Dappen was "very angry" and repeated to Dunlea that he would never forgive her for what she did to him. The conversation with Dappen prompted Dunlea to begin therapy.

Although Dunlea "has been haunted by depression, thoughts of suicide, shame, disgust, and denial," which have "greatly damaged every facet of [her] life," it was only through therapy that she allegedly discovered that these feelings were symptomatic of a psychological illness caused by her father's incestuous rape.

On December 19, 1992, Dunlea filed a three-count complaint in the Circuit Court of the Third Circuit.[1] She alleged that: (1) the statement made by Dappen to Dunlea's sister was defamatory (count I); (2) the statements made by Dappen to Dunlea's sister and Dunlea directly constituted intentional and/or negligent infliction of emotional distress (count II); and (3) she suffered damages as a result of CSA (count III). Relying on the California Code of Civil Procedure (Cal.C.C.P.) Section 340.1,[2] Dunlea asserted in count III of her complaint that the substantive law of California should be applied because the incestuous rape occurred in California. Dunlea's prayer for relief sought "special, general, and punitive damages caused her, in an amount to be proven at trial[.]"

On January 22, 1993, Dappen timely filed his answer to the complaint, essentially denying, or claiming lack of sufficient information to admit or deny, each and every allegation of the complaint, except that he admitted the allegation regarding his current address. On April 4, 1993, Dunlea filed a motion to compel answers to interrogatories, seeking information regarding Dappen's assets. The court denied the motion on the basis that the infor-

mation sought was not relevant where the record did not establish a reasonable basis for punitive damages.

■ On June 22, 1993, Dappen filed a "Motion to Dismiss the Complaint,[3] or, in the Alternative, for Summary Judgment." Subsequent to the hearing on the motion, which was held on July 13, 1993, the court granted the motion to dismiss with respect to count III (the CSA claim), ruling that the claim was barred by Hawai'i's statute of limitations. Although not clearly articulated, the court, in so ruling,[4] necessarily rejected Dunlea's argument that, under the "discovery rule," her cause of action did not accrue until she knew, or reasonably should have known, not only of the abuse, but also of the resulting injury and the causative link between the two.

With respect to counts I and II (Dunlea's defamation and emotional distress claims), Dappen argued that, because both counts were based solely on the CSA allegations, those claims could not survive the dismissal of count III (the CSA claim). The court disagreed and denied Dappen's motion, but suggested that, because Dappen's motion had not addressed whether the statements were, in fact, defamatory, a second motion for summary judgment should be brought. At the same hearing, the court denied Dunlea's second "Motion to Compel Answers to Interrogatories and for Sanctions Filed July 6, 1993," explaining that if counts I and II survived the anticipated motion for summary judg-

---

1. Venue was subsequently transferred to the Circuit Court of the Second Circuit by stipulation.

2. The California Code of Civil Procedure Section 340.1 (1990) provided in pertinent part:

 (a) In any civil action for recovery of damages suffered as a result of childhood sexual abuse, the time for commencement of the action shall be within eight years of the date the plaintiff attains the age of majority or within three years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual abuse, whichever occurs later.

3. Technically, Dappen's motion to dismiss was untimely because his answer to complaint had

already been filed. *See* Charles Alan Wright & Arthur R. Miller, 5A *Federal Practice and Procedure: Civil 2d* § 1357 at 300–301 (2d ed. 1990) ("[A] post-answer Rule 12(b)(6) motion is untimely and some other vehicle, such as a motion for judgment on the pleadings or for summary judgment, must be used to challenge the failure to state a claim for relief."). We therefore treat Dappen's motion as a motion for judgment on the pleadings, pursuant to Hawai'i Rules of Civil Procedure Rule 12(c). *See Baehr v. Lewin*, 74 Haw. 530, 546, 852 P.2d 44, 52–53, *as clarified on grant of reconsideration in part*, 74 Haw. 650, 875 P.2d 225 (1993).

4. Specifically, the court stated, "I think the pleadings demonstrate that [Dunlea] was aware of the facts at least well before her majority, and the statute ran in '72 when she turned 25."

ment, discovery relevant to punitive damages would be allowed at that time.

Thereafter, on November 2, 1993, Dappen brought a second motion, seeking summary judgment on the defamation and emotional distress claims, which the court granted.

At the same hearing, on January 20, 1994, the court considered Dunlea's motion to compel the deposition testimony of Dappen and his wife, Lillian Dappen. The motion, which was filed on October 13, 1993, was prompted by defense counsel's instructions to Dappen and his wife not to answer questions at least forty-five times during their depositions on September 17, 1993. In light of the summary dismissal of Dunlea's remaining claims, the motion to compel was denied as moot. Final judgment in favor of Dappen was entered on October 31, 1994, and Dunlea timely appealed.

## II. *DISCUSSION*

### A. *Dunlea's CSA Claim*

Dappen's motion to dismiss the CSA claim relied exclusively on the ground that the applicable statute of limitations had run and, therefore, that the complaint had failed to state a claim. The circuit court granted the motion on that basis alone;[5] therefore, we need not consider the other defenses raised in Dappen's answer to the complaint.[6]

It is well settled that:

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her

claim that would entitle him or her to relief. *Ravelo v. County of Hawaii*, 66 Haw. 194, 198, 658 P.2d 883, 886 (1983) (quoting *Midkiff* [*v. Castle & Cooke, Inc.*], 45 Haw. [409,] 414, 368 P.2d [887,] 890 [ (1962) ] ); *Marsland v. Pang*, 5 Haw.App. 463, 474, 701 P.2d 175, 185–86, *cert denied*, 67 Haw. 686, 744 P.2d 781 (1985). We must therefore view a plaintiff's complaint in a light most favorable to him or her in order to determine whether the allegations contained therein could warrant relief under any alternate theory. *Ravelo*, 66 Haw. at 199, 658 P.2d at 886. For this reason, in reviewing the circuit court's order dismissing the plaintiffs' complaint in this case, our consideration is strictly limited to the allegations of the complaint, and we must deem those allegations to be true. *Au [v. Au]*, 63 Haw. [210,] 214, 626 P.2d [173,] 177 (1981).

*Baehr*, 74 Haw. at 545, 852 P.2d at 52.

Thus, accepting the allegations of Dunlea's complaint as true, we must decide whether it appears beyond doubt that she can prove no set of facts in support of her claim of CSA that would entitle her to relief under any theory. Although count III of the complaint alleged a cause of action under a California statute, we note that the circuit court's determination that Hawai'i law applies with respect to the statute of limitations is not challenged on appeal. Whether Hawai'i or California law applies, however, is not necessarily dispositive because the California statute appears to be a codification of the discovery rule that this court has judicially adopted.[7]

---

5. An examination of the record reveals that Dunlea's answer to an interrogatory, giving her birthdate, was attached as an exhibit to Dappen's motion. The circuit court stated, however, that it was granting the motion to dismiss rather than the alternative motion for summary judgment because "the pleadings demonstrate" that the statute of limitations had run. This determination could have been made without considering Dunlea's birthdate because the complaint alleged that the CSA occurred between 1961 and 1964. Accordingly, we conclude that the circuit court properly addressed the "motion to dismiss" instead of the motion for summary judgment.

6. We note, however, that some of the defenses asserted in Dappen's answer, which was filed by

his former counsel, were so offensive that comment is warranted. The answer asserted that, "[a]s to all counts," the claims were barred by contributory negligence, assumption of the risk, and comparative negligence. The inclusion of these defenses against a claim alleging incestuous rape of a minor are as frivolous as they are repugnant and thus would have warranted appropriate sanctions, *sua sponte*.

7. The record reveals that Dunlea filed her complaint, at most, sixteen months after she allegedly discovered her psychological injuries and their causal nexus with Dappen's actions. Therefore, although the California statute allows three years to bring a cause of action for CSA and Hawai'i Revised Statutes (HRS) § 657-7 (1993) allows

Under Hawai'i law, damage to persons or property is governed by HRS § 657–7, which provides that "[a]ctions for the recovery of compensation for damage for injury to persons or property shall be instituted within two years after the cause of action accrued, and not after, except as provided in section 657–13." [8] HRS § 657–7. As this court noted in *Yoshizaki v. Hilo Hospital*, 50 Haw. 150, 151, 433 P.2d 220, 221 (1967), "[c]learly, the determining word in the statute is 'accrued'."

▮ The time of accrual of a cause of action for CSA is an issue of first impression in Hawai'i. In other contexts, however, we have employed the "discovery rule," holding that a cause of action accrues when the plaintiff discovers, or reasonably should have discovered, the elements giving rise to the claim. *See e.g., Yoshizaki*, 50 Haw. at 154, 433 P.2d at 223 (holding that cause of action does not accrue until plaintiff knew or should have known of defendant's negligence, thus, medical malpractice action brought in 1963 based upon negligent diagnosis in 1959 not barred by statute of limitations where plaintiff learned of misdiagnosis in 1961); *Basque v. Yuk Lin Liau*, 50 Haw. 397, 399, 441 P.2d 636, 637 (1968) (extending *Yoshizaki* rule to property damage and remanding for determination of when plaintiff knew or should have discovered that an actionable wrong had been committed against his property); *Yamaguchi v. The Queen's Medical Center*, 65 Haw. 84, 90, 648 P.2d 689, 693–94 (1982) holding that cause of action for medical malpractice accrues when "plaintiff discovers or should have discovered the negligent act, the damage, and the causal connection between the former and the latter" (citing *Jacoby v. Kaiser Foundation Hospital*, 1 Haw.App. 519, 622 P.2d 613 (1981)); *Pele Defense Fund v. Paty*, 73 Haw. 578, 598, 837 P.2d 1247, 1260 (1992) (stating that cause of action for breach of section 5(f) trust accrued "when

PDF discovered the breach of trust, the injury to its members, and the connection between the breach and the injury"), *cert. denied*, 507 U.S. 918, 113 S.Ct. 1277, 122 L.Ed.2d 671 (1993); *cf. Hays v. City and County of Honolulu*, 81 Hawai'i 391, 917 P.2d 718 (1996) (holding that, where plaintiff's affidavit demonstrated that he was aware of the City's negligent act, his injury, and the causal connection between the act and the injury, discovery rule would not delay accrual of action).

▮ In this case, Dunlea alleged that it was only after she sought psychological counseling that she became aware that Dappen's acts caused her psychological injury and illness. On appeal, Dappen asserts, in his answering brief, that, because Dunlea does not contend that she repressed all memory of the abuse and her complaint makes clear that she was aware of the wrongful nature of Dappen's acts, the circuit court correctly determined that the statute of limitations began to run when Dunlea reached the age of majority and that any action commenced after 1972 was barred.

In *DeRose v. Carswell*, 196 Cal.App.3d 1011, 242 Cal.Rptr. 368 (1987), a case relied upon by Dappen, the California Court of Appeals considered a claim by a twenty-five-year-old plaintiff (DeRose) who alleged that she had been sexually abused by her stepgrandfather (Carswell) between the ages of four and eleven. The court held that the discovery rule did not apply because "the allegations of the complaint leave no doubt that DeRose was actually aware long ago of the facts necessary to state a cause of action against Carswell based upon the sexual assaults." *Id.*, 242 Cal.Rptr. at 371. The court was unpersuaded by DeRose's arguments, which were supported by psychological and sociological evidence, that psychological defense mechanisms caused by sexual abuse, particularly when incestual, prevented De-

---

only two, this distinction is, likewise, not dispositive.

**8.** HRS § 657–13 (1993) tolls section 657–7 for infancy, insanity, or imprisonment, as follows:

**Infancy, insanity, imprisonment.** If any person entitled to bring any action specified in

this part ... is, at the time the cause of action accrued, either:

(1) within the age of eighteen years;

....

such person shall be at liberty to bring such actions within the respective times limited in this part, after the disability is removed or at any time while the disability exists.

Rose's recognition of the cause and extent of emotional harm. The court stated: "This case ... does not require us to determine the validity of any psychological theory or to articulate general rules governing the delayed discovery doctrine's application in sexual abuse cases," *id.* at 370, because "[the immediate harm caused by the alleged assaults gave DeRose a] right to sue" at the time of the assaults. *Id.* at 371. The court intimated, however, that, "[i]f DeRose could and did allege that she repressed her memories of the sexual assaults until one year before filing her complaint, she might be able to invoke the delayed discovery rule." *Id.* (footnote omitted).

Initially, we note that *DeRose* has been superseded by Cal. C.C.P. Section 340.1.[9] *See, e.g., Sellery v. Cressey*, 48 Cal.App.4th 538, 55 Cal.Rptr.2d 706, 711–12, *as modified* by 49 Cal.App.4th 54A (Cal.Ct.App.1996) (explaining that intent of legislature in enacting Section 340.1 was to reverse result reached in *DeRose* ). Moreover, courts that apply the discovery rule only where a plaintiff has repressed memory appear to be making a factual determination regarding the reasonableness of the plaintiff's delayed discovery of her or his claim for relief.

> Courts engaging in the [distinction between plaintiffs who have repressed memories and those who consciously recall the abuse] thus appear to accept that it may be reasonable for someone who represses all memory of incestuous abuse not to have discovered it earlier. These same courts, however, apparently do not accept that it may be equally reasonable for someone with serious psychological problems and childhood memories of incestuous abuse not to have discovered the connection between the two, and thus to have delayed filing suit.

Jocelyn B. Lamm, Note, *Easing Access to the Courts for Incest Victims: Toward an Equitable Application of the Delayed Discovery Rule*, 100 Yale L.J. 2189, 2204 (1991).

■ We are persuaded by the reasoning of those courts that, having considered the application of either statutory or judicially cre-

ated discovery rules to claims of CSA, have determined that the issue of when a plaintiff discovered, or reasonably should have discovered, that she or he was psychologically injured and that the injury was caused by CSA is a question of fact for the jury.

For example, in *Hammer v. Hammer*, 142 Wis.2d 257, 418 N.W.2d 23 (Wis.Ct.App. 1987), the plaintiff did not deny that she had always had conscious recollection of sexual abuse by her father, or that she had reported the abuse to her mother when she was fifteen years old. She alleged, however, that,

> because of the psychological distress caused by the abuse and the coping mechanisms which resulted, she was unable to perceive or know the existence or nature of her psychological and emotional injuries. These manifestations continued to operate on her long after the incidents of sexual molestation had ended, preventing her from perceiving her psychological and emotional injuries and their connection to her father's earlier acts, and causing her to resist and reject any suggestions that she obtain psychological counseling or legal advice.

*Id.*, 418 N.W.2d at 25. The Wisconsin Court of Appeals reversed the trial court's order granting the defendant's motion to dismiss on statute of limitations grounds. The court, after reviewing the psychological effects of incestuous abuse and previous applications of the judicially adopted discovery rule, held, "as a matter of law, that a cause of action for incestuous abuse will not accrue until the victim discovers, or in the exercise of reasonable diligence should have discovered, the fact and cause of the injury." *Id.*, 418 N.W.2d at 26. The court went on to state:

> In concluding that the discovery rule is applicable, however, we do not decide the factual question of when [plaintiff] discovered or should have discovered her injuries and their cause. Since the trial court rejected the applicability of the discovery rule, this question was not answered. Thus, because genuine issues of material fact remain open, including when [plaintiff's] cause of action accrued, we reverse and remand this matter for trial.

9. *See supra* note 2.

*Id.* at 27 (footnote omitted). The Supreme Court of North Dakota reached a similar result in *Osland v. Osland,* 442 N.W.2d 907 (N.D.1989). In that case, the defendant-father appealed from a trial court's judgment awarding the plaintiff-daughter damages for CSA, arguing that the trial court erred in striking his statute of limitations defense. The trial court had ruled that, because the plaintiff-daughter had suffered " 'severe emotional trauma' from the sexual abuse" and she "was not able to fully understand or discover her cause of action during the applicable statutory time period[,]" the statute of limitations was tolled until she reasonably discovered that a claim existed. *Id.* at 908–09. The *Osland* court stated that the determination of when a plaintiff discovered or should have discovered her cause of action was "a fact question which, when made by the trial court, will not be set aside on appeal unless clearly erroneous." *Id.* at 909. The court further stated:

> The trial court found that the severe emotional trauma experienced by [the plaintiff-daughter] resulted in her being unable to fully understand or discover her cause of action during the applicable statutory limitations period. Having reviewed the record, we cannot conclude that the trial court's finding in this regard [was] clearly erroneous.

*Id.* at 909. *See also Doe v. LaBrosse,* 588 A.2d 605, 607 (R.I.1991) (remanding for evidentiary hearing to "determine the date that the [thirty-four and thirty-five year old] plaintiffs discovered, or with all due diligence should reasonably have discovered, the causal connection between the defendant's alleged acts [of incest] and the plaintiffs' alleged injuries"); *Hildebrand v. Hildebrand,* 736 F.Supp. 1512, 1523 (S.D.Ind.1990) (denying defendant's motion for summary judgment on CSA claim because, construing inferences in plaintiff's favor, "[t]his court cannot conclude as a matter of law that [plaintiff] ascertained her injuries back in the early 1980's; whether she did or should have ascertained her injuries is a question to be resolved by the jury.").

**10.** *See supra* note 2.

Other jurisdictions have reached the same results when interpreting statutory provisions codifying the discovery rule for CSA claims. In *Sellery,* 55 Cal.Rptr.2d 706, the California Court of Appeals held that, under Cal. C.C.P. § 340.1,[10] a plaintiff need not allege repression of memory to delay the accrual of her or his cause of action. The trial court had granted defendants' motion for summary judgment based on its finding that the plaintiff's "claims were time barred 'by reason of her admitted conscious memory of torts committed as to her during her minority[.]' " *Id.,* 55 Cal.Rptr.2d at 709. The court of appeals reversed, stating:

> Nothing in section 340.1 requires that memories of abuse be repressed as a prerequisite to a delayed discovery claim. To the contrary, to satisfy delayed discovery plaintiff need only allege the onset of psychological injury or illness after the age of majority and that he commenced his action within three years of the time he discovered or reasonably should have discovered such psychological injury or illness was caused by the childhood sexual abuse.

*Id.,* 55 Cal.Rptr.2d at 711–12 (quoting *Lent v. Doe,* 40 Cal.App.4th 1177, 47 Cal.Rptr.2d 389, 394 (1995)). *See also Shirley v. Reif,* 260 Kan. 514, 920 P.2d 405 (1996) (applying Kansas statute defining accrual of CSA cause of action as the date the person discovers or reasonably should have discovered that the injury or illness was caused by CSA, and reversing summary judgment in favor of defendants because question whether plaintiffs discovered that their injuries were caused by CSA more than three years before bringing their action was issue of fact for the jury); *Werre v. David,* 275 Mont. 376, 913 P.2d 625 (1996) (applying statute providing that any action for CSA must be brought "3 years after the plaintiff discovers or reasonably should have discovered that the injury was caused by the act of childhood sexual abuse[,]" and holding that issue of when plaintiff discovered connection between her sexual abuse and mental disorders was a question of fact for the jury); *L.M.S. v. N.M. and V.P.,* 911 S.W.2d 703 (Mo.Ct.App.1995) (applying statutory codification of the discov-

ery rule, and holding that dismissal of plaintiff's CSA claim was error because, construing the allegations favorably to plaintiff, her damage may not have been ascertainable until less than three years before filing suit).

Because we agree that the issue of when Dunlea discovered, or should have discovered, that her alleged injuries were caused by Dappen's alleged actions is a question of fact for the jury, we cannot hold as a matter of law that Dunlea ascertained her alleged injuries and their causal link to Dappen's alleged actions more than two years before she asserted her claim, or that her failure to recognize her alleged injuries and the cause of those injuries sooner was unreasonable. Certainly, a reasonable jury could find that Dunlea filed suit within two years of discovering her alleged injuries and the cause of those injuries, given their nature and circumstances. We therefore hold that the motion to dismiss was wrongly granted. Accordingly, we vacate the circuit court's dismissal of count III and remand this case for trial on Dunlea's CSA claim.

■ We point out, however, that:

The purpose behind extending the discovery rule to adult survivors of childhood sexual abuse is not to provide a guaranteed remedy to such plaintiffs. The purpose is to provide an *opportunity* for an adult who claims to have been sexually abused as a child to prove not only that she [or he] was abused and that the defendant was her [or his] abuser, but that her [or his] suffering was such that she [or he] did not and could not reasonably have discovered all the elements of her [or his] cause of action at an earlier time.

*Tyson v. Tyson,* 107 Wash.2d 72, 727 P.2d 226, 237 (1986) (Pearson, J., dissenting) (emphasis in original).

B. *Dunlea's Defamation and Emotional Distress Claims*

■ It is well settled that:

We review [a] circuit court's award of summary judgment *de novo* under the same standard applied by the circuit court. *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 104, 839 P.2d 10, 22, *reconsideration denied,* 74 Haw. 650, 843 P.2d 144

(1992) (citation omitted). As we have often articulated:

[s]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is *no genuine issue as to any material fact* and that the moving party is entitled to a judgment as a matter of law.

*Id.* (emphasis added) (citations and internal quotation marks omitted); *see* Hawai'i Rules of Civil Procedure (HRCP) Rule 56(c) (1990). "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Hulsman v. Hemmeter Dev. Corp.,* 65 Haw. 58, 61, 647 P.2d 713, 716 (1982) (citations omitted).

*Hays,* 81 Hawai'i at 392–93, 917 P.2d at 719–20 (quoting *Maguire v. Hilton Hotels Corp.,* 79 Hawai'i 110, 112, 899 P.2d 393, 395 (1995)) (brackets in original).

### 1. Dunlea's Defamation Claim

■ In order to sustain a claim for defamation, a plaintiff must establish the following four elements:

(a) a false and defamatory statement concerning another;

(b) an unprivileged publication to a third party;

(c) fault amounting at least to negligence on the part of the publisher [actual malice where the plaintiff is a public figure]; and

(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Beamer v. Nishiki,* 66 Haw. 572, 578–79, 670 P.2d 1264, 1271 (1983) (quoting Restatement (Second) of Torts § 558 (1977)).

As previously indicated, Dunlea's defamation claim was based entirely on the statement Dappen had made to his other daughter, Dunlea's sister, that he was still angry with Dunlea and would not forgive her for what happened in 1964. In response to Dunlea's request for admissions, Dappen admitted that, "in a conversation with Patricia

Jacobs [Dunlea's sister], vacationing with Defendant Howard Dappen, Patricia Jacobs was told [that] Mr. Dappen would not forgive [Dunlea] for allegations brought in 1964."

 In his motion for summary judgment on the defamation claim, Dappen had the initial burden of identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *First Hawaiian Bank v. Weeks*, 70 Haw. 392, 396, 772 P.2d 1187, 1190 (1989) (citing Wright, Miller & Kane *Federal Practice and Procedure: Civil 2d*, section 2711, at 555–56 (1983)). Dappen met this burden by identifying the portion of Dunlea's deposition testimony wherein she testified that "I believe it [ (Dappen's statement to Dunlea's sister) ] to be true. He [ (Dappen) ] said he was angry, and he said he would never forgive me, and I believe *he speaks the truth* of [sic] that." (Emphasis added.) Additionally, Dappen identified other portions of Dunlea's deposition testimony demonstrating that Dunlea suffered no damage to her reputation, nor were her personal associations with friends and relatives affected. Dappen asserted that there was no genuine issue of material fact and that he was therefore entitled to judgment as a matter of law because Dunlea could not establish that the statement was false and defamatory.

 In opposing summary judgment, Dunlea attempted to convince the circuit court of the existence of genuine issues for trial by submitting an affidavit wherein she attested that:

What [Dappen] meant when he said that he would not forgive me for allegations brought in 1964[ ] is that I was wrong for bringing these charges against him because he has consistently maintained that they were not true. These statements were understood by those who knew of my victimization in 1964[ ] to mean that I was bringing false charges at that time[.]

Dunlea, however, failed to set forth any specific *facts* showing that the truthfulness of the statement was a genuine issue for trial. Although Dunlea interpreted Dappen's statement as an assertion that her accusations against Dappen were false, the truth of an alleged dafamatory statement is "measured by the ordinary implication of the words used." *Basilius v. Honolulu Pub. Co., Ltd.*, 711 F.Supp. 548, 551 (D.Haw.), *aff'd without opinion*, 888 F.2d 1394 (9th Cir.1989). Dunlea argues that the ordinary implication of the word "forgive" is that there was some act committed by her that required forgiveness. Thus, Dunlea urges that Dappen's statement implied that he would not forgive her for bringing false accusations against him; in other words, he would not forgive her for lying. Dappen's statement, however, is equally capable of a nondefamatory interpretation, that is, that Dappen would not forgive Dunlea for betraying him or for being disloyal.

 We have stated that "summary judgment would be proper where, although the communication is susceptible to a defamatory interpretation, the moving party showed 'through uncontroverted depositions and affidavits that the publication was made without deliberate falsification and without a high degree of awareness of the probable falsity of the statements in the publication[.]' " *Fernandes v. Tenbruggencate*, 65 Haw. 226, 228–29, 649 P.2d 1144, 1147 (1982) (citation omitted). Because there is no dispute that the statement at issue was true, we hold that summary judgment was properly granted with respect to count I.

## 2. Dunlea's Emotional Distress Claim

 In Count II of her complaint, Dunlea alleged that Dappen's statements to Jacobs and to Dunlea directly, that he would not forgive Dunlea for what she had done in 1964, "constitute extreme and outrageous conduct which was intended to cause severe emotional distress" and did cause severe emotional distress.[11] Dappen's motion for

---

11. Count II of Dunlea's complaint is titled "Intentional & Negligent Infliction of Emotional Distress." Dunlea, however, alleges no facts in support of her claim for negligent infliction of emotional distress. We have adhered to the general rule that "recovery for negligent infliction of emotional distress by one not physically injured is generally permitted only when there is 'some physical injury to property or a person' resulting from the defendant's conduct." *Ross v. Stouffer*

**38**

summary judgment established, by means of Dunlea's deposition testimony, that there is no dispute that: (1) Dappen's statement to Jacobs was made on Dappen's lanai, with no one but himself and Jacobs present; (2) Dappen's statement to Dunlea was made in response to Dunlea's inquiry in the course of a telephone conversation initiated by Dunlea; (3) the statement was made to Dunlea only once; and (4) there was no further contact between Dappen and Dunlea following the single phone call. In her opposition to Dappen's motion, Dunlea failed to establish that there was a genuine issue of material fact; she attached only Dappen's responses to a request for admissions in which Dappen admitted that (1) he made the statement to Jacobs, and (2) "Defendant Howard Dappen states when[,] in August of 1991, Sandra Dunlea called and asked, Defendant Dappen told her he would not forgive her for making accusations." Therefore, summary judgment with respect to count II of Dunlea's complaint would be proper if, on the undisputed facts, Dappen was entitled to judgment as a matter of law.

 In *Marshall v. University of Hawai'i*, 9 Haw.App. 21, 38, 821 P.2d 937, 947 (1991), the Intermediate Court of Appeals enumerated the elements of the tort of intentional infliction of emotional distress: "(1) that the act allegedly causing the harm was intentional; (2) that the act was unreasonable; and (3) that the actor should have recognized that the act was likely to result in illness." *Id.* (citation omitted). More recently, in *Ross*, this court explained that

[r]ecovery for intentional infliction of emotional distress is permitted only if the alleged tortfeasor's acts were "unreasonable." *Calleon v. Miyagi*, 76 Hawai'i 310, 321 n. 7, 876 P.2d 1278, 1289[, n. 7] (Sup. 1994), *as amended*, 76 Hawai'i 453, 879 P.2d 558 (Sup.1994); *Chedester v. Stecker*, 64 Haw. 464, 467, 643 P.2d 532, 535 (1982); *Marshall v. University of Hawai'i*, 9 Haw. App. 21, 38, 821 P.2d 937, 947 (1991). An act is "unreasonable" if it is " 'without just cause or excuse and beyond all bounds of decency[.]' " *Chedester*, 64 Haw. at 468,

*Hotel Co. (Hawai'i) Ltd.*, 76 Hawai'i 454, 465–66, 879 P.2d 1037, 1048–49 (1994). Dunlea did not

643 P.2d at 535 (quoting *Fraser v. Blue Cross Animal Hospital*, 39 Haw. 370, 375 (1952)). In other words, the act complained of must be "outrageous," as that term is employed in the *Restatement (Second) of Torts* § 46 (1965). *Id.*

 "The question whether the actions of the alleged tortfeasor are unreasonable or outrageous is for the court in the first instance, although where reasonable persons may differ on that question it should be left to the jury." *Wong v. Panis*, 7 Haw. App. 414, 421, 772 P.2d 695, 700 (1989) (citing *Restatement (Second) of Torts* § 46 comment h).

*Ross*, 76 Hawai'i at 465, 879 P.2d at 1048 (footnote omitted). We noted that,

[i]n explaining the type of "outrageous" conduct that makes a claim for intentional infliction of emotional distress actionable, the *Restatement (Second) of Torts* states:

It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Restatement (Second) of Torts* § 46 comment d.

*Ross*, 76 Hawai'i at 465 n. 12, 879 P.2d at 1048 n. 12.

 Dunlea points to no evidence in the record that Dappen's statement to Jacobs was "outrageous," or that Dappen should have recognized that his statement to Jacobs would cause Dunlea illness or injury. Dap-

allege any physical injury to person or property resulting from Dappen's statements.

pen expressed his own feelings to a close family member in the privacy of his home. We therefore hold that Dappen's statement to Jacobs was not so unreasonable or outrageous as to give rise to a cause of action for intentional infliction of emotional distress. Because the statement to Jacobs was not actionable, we also hold that Dappen's statement was not made actionable by the fact that he repeated it to Dunlea, in direct response to Dunlea's inquiry. Consequently, Dappen's motion for summary judgment on Count II of Dunlea's complaint was properly granted.

### C. *Discovery on Remand*

 In a reprise of her motion to compel deposition testimony, Dunlea raises a plethora of discovery issues on appeal. Essentially, she asserts that defense counsel's instructions to Dappen, during deposition, not to answer questions regarding the CSA claim were improper, notwithstanding that the CSA claim had been dismissed. The trial court dismissed the motion to compel as moot when it granted Dappen's motion for summary judgment on Counts I and II of Dunlea's complaint. However, because we are remanding this case for further proceedings with respect to Dunlea's CSA claim, we anticipate that further discovery pertinent to that claim will be required. Any relevance objections to questions regarding the CSA claim are now moot. During the anticipated further discovery on remand, refusal to answer such questions may be appropriately dealt with by a motion to compel.[12]

### III. *CONCLUSION*

Based on the foregoing, we: (1) affirm the grant of summary judgment in favor of Dappen on count I (defamation) and count II (negligent and intentional infliction of emotional distress); (2) vacate the circuit court's dismissal of count III (CSA claim); and (3) remand this case for trial on Dunlea's claim of CSA.

---

12. One discovery issue not raised on appeal, but addressed in Dappen's answering brief, is whether Dappen's assets are discoverable, absent a judgment that he is liable for punitive damages. We comment only because this issue was subject to extensive litigation in the circuit court and appears likely to be the subject of further litigation. We generally agree with the trial court that discovery of a defendant's assets is not appropriate "until there's a prima facie showing in discovery that you are going to get to a jury on punitives." Although a prima facie showing necessarily precedes a judgment on liability for punitive damages, the trial court has discretion to fashion appropriate orders and procedures to avoid prejudice to the defendant. For example, the court may allow discovery of Dappen's assets, subject to a protective order (*e.g.*, allowing discovery of the information, but subject to specific instructions that the information is to be provided to the attorney only and shall not be divulged to anyone, including the attorney's client, until such time as the trial court lifts the protective order), and/or the court may bifurcate the issues of liability and damages so that evidence of Dappen's financial condition is not admissible until the jury has determined whether Dunlea's claim was timely brought and whether Dappen is liable. *See generally*, J. McLoughlin, Annotation: *Necessity of Determination or Showing of Liability for Punitive Damages Before Discovery or Reception of Evidence of Defendant's Wealth*, 32 A.L.R.4th 432 (1984).