Filed 10/17/14  Portillo v. Lilval Properties CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# COPY

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| ARMANDO PORTILLO, | C071665 |
| Plaintiff and Appellant, | (Super. Ct. No. 39200900209980CUBCSTK) |
| v. | |
| LILVAL PROPERTIES, LTD. et al., | ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT] |
| Defendants and Respondents. | |

THE COURT:

It is ordered that the opinion filed herein on September 24, 2014, be modified as follows:

1. Following the second full paragraph which begins on page 13 with "Because no triable issues of material fact . . ." insert the following text:

1

## IV

### *Petition for Rehearing*

On October 8, 2014, plaintiff filed a petition for rehearing arguing that our previous opinion erroneously relied on evidence from his own deposition that the trial court purportedly found inadmissible. According to plaintiff, the trial court sustained an objection to his deposition testimony, which plaintiff asserts was attached as an exhibit to the Declaration of Dan Keyser. The record belies his argument. We therefore deny the petition for rehearing.

While the trial court sustained an objection to the Keyser declaration and its exhibits, the record is devoid of any evidence showing plaintiff's deposition testimony was *actually* an exhibit to the Keyser declaration. The Keyser declaration itself never references plaintiff's deposition testimony. Nor does the Keyser declaration ever cite to the deposition testimony as being one of its five listed exhibits--Exhibits A through E. The fact that the trial court ruled the Keyser declaration and its exhibits were inadmissible does not mean that the ruling applied to plaintiff's deposition testimony.

As defendants pointed out in their respondent's brief, "[t]he trial court sustained objections to the declaration of Dan Keyser, but no objections were made to the deposition testimony of Armando Portillo. Mr. Portillo's deposition testimony was accepted without objection." Notably, plaintiff never disputed respondent's contention that the deposition testimony was before the court below for consideration.

Other documents in the record also lead to the conclusion that plaintiff's deposition testimony was not an exhibit to the Keyser declaration. For example, defendants filed a document entitled "Index of Evidence in Support of Motion for Summary Judgment or in the Alternative for Summary Adjudication." Defendant's evidence index lists the following items of evidence in support of their summary judgment motion: "1. Declaration of Dan Keyser with exhibits[;] [¶] 2. Deposition

2

Testimony of Armando Portillo (cited portions underlined)[; and] [¶] 3. Request for judicial notice of three exhibits." This document plainly shows the plaintiff's deposition testimony as being separate from the Keyser declaration and not as an attachment to the declaration as plaintiff now argues.

Similarly, plaintiff filed a document entitled, "Objections to Evidence Offered in Support of Defendant's Motion." The document specifically objects to each and every paragraph in the Keyser declaration as well as to Exhibits A through E of the declaration. The document, however, never mentions plaintiff's deposition testimony, nor specifically objects to that evidence. If plaintiff had intended to object to the deposition testimony as part of the Keyser declaration, he arguably would have included such an objection in this document. The absence of a specific objection to the deposition testimony is telling.

It is also noteworthy that in opposing the motion for summary judgment, plaintiff's separate statement of facts admitted that material facts based on his deposition testimony were undisputed. Had plaintiff truly objected to the deposition testimony as part of the Keyser declaration, it is unlikely plaintiff would have conceded that various facts based on the deposition testimony were undisputed.

While plaintiff did sometimes object to the deposition testimony as irrelevant, the objection at most preserved the issue for appeal since it does not appear that the trial court ever expressly ruled on the objection. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534 [when a trial court ruling on a summary judgment motion "fails to rule expressly on specific evidentiary objections, it is presumed that the objections have been overruled . . . and the objections are preserved on appeal"].) That does not mean, however, that the trial court did not consider the evidence (*ibid.* [trial court presumed to have considered the evidence where the court fails to rule expressly on a specific evidentiary objection]), or that plaintiff's relevancy objections were meritorious. (*Id.* at pp. 534-535 [appellate court may consider evidentiary objections on the merits in reviewing summary judgment].)

3

Finally, rule 3.1116 of the California Rules of Court governs the use of deposition testimony as an exhibit to a motion. Under the rule, "[t]he first page of any deposition used as an exhibit must state the name of the deponent and the date of the deposition." (Cal. Rules of Court, rule 3.1116 (rule 3.1116).) "Other than the title page, the exhibit must contain only the relevant pages of the transcript." (Rule 3.1116.) The testimony upon which the party is relying must also be marked in a manner that calls attention to the testimony. (Rule 3.1116.) A review of the record reveals defendants complied with the requirements of rule 3.1116. And, at this late stage, any purported objection based on lack of authentication has been waived since plaintiff never objected below that the deposition transcript was not properly authenticated. (*People v. Sims* (1993) 5 Cal.4th 405, 448 [failure to raise objection to lack of authentication of transcript in trial court waived objection on appeal].)

Given the record and plaintiff's failure to counter respondents' claim that the deposition testimony was properly before the court, we rightfully considered the evidence of plaintiff's deposition in reaching our conclusion. The petition for rehearing is denied. This modification does not change the judgment.


THE COURT:



     HULL           , Acting P. J.



     MAURO        , J.



     MURRAY      , J.


4

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| ARMANDO PORTILLO, | C071665 |
| Plaintiff and Appellant, | (Super. Ct. No. 39200900209980CUBCSTK) |
| v. | |
| LILVAL PROPERTIES, LTD., et al., | |
| Defendants and Respondents. | |

Plaintiff Armando Portillo appeals from a final judgment entered following an order granting a motion for summary judgment filed by defendants Lilval Properties, Ltd. (Lilval) and Grupe Management Company (Grupe) (collectively, defendants).  Plaintiff's first amended complaint alleged promissory estoppel, fraud, and breach of contract.  The underlying dispute stems from plaintiff's loss of a gas station business when a lease for the real property on which the station sat was not renewed after plaintiff believed there was no need to exercise an option to extend the lease because defendants had promised to sell him the real property for $850,000.  We conclude no triable issues of material fact remain as to any of plaintiff's causes of action and affirm.

1

Consistent with basic rules of appellate procedure, we construe the evidence and reasonable inferences therefrom in the light most favorable to plaintiff, the party who opposed summary judgment.  (*Sellery v. Cressey* (1996) 48 Cal.App.4th 538, 541, fn. 1.)

A.      The Lease Agreement

Defendant Lilval owned real property at the intersection of Benjamin Holt Drive and Interstate 5 in Stockton.  Defendant Grupe managed the property for Lilval.

In 1971, Lilval leased the property to Shell Oil Company (Shell) to operate a gas station, which Lilval agreed to build under the terms of the lease.  The gas station was completed in 1972.

In 1990, Shell and Lilval amended the lease agreement to give Shell options to extend the lease for five additional periods of three years each.  To extend the lease, Shell was required to notify Lilval in writing at least 45 days prior to the expiration of the then-current extension period.

Shell later assigned the amended lease to Equilon Enterprises, LLC.  Equilon Enterprises, in turn, assigned the amended gas station lease to John Kendrick (Kendrick) in November 2004.  At the time, the lease was set to expire on May 31, 2006, unless renewed for an additional three years under the lease's extension provisions.  Notice of the intent to extend the lease was due no later than April 16, 2006.

B.      Plaintiff's Agreement with Kendrick to Purchase the Gas Station Business

Sometime in 2004, plaintiff learned Kendrick was selling the gas station business. Plaintiff originally testified in his deposition that he formed APO Enterprises, Inc., to purchase the gas station business from Kendrick and that he personally did not acquire any interest in the business.  He later claimed in his declaration opposing the motion for summary judgment that he purchased the business individually.  As discussed below, this factual dispute is not material to the outcome of this appeal.  (*Hanson v. Lucky Stores,*

2

*Inc.* (1999) 74 Cal.App.4th 215, 223, fn. 5 [" '[S]ummary judgment may be appropriate even if there are disputed factual issues; if the defendant's showing negates an essential element of the plaintiff's case, no amount of factual conflict upon other aspects of the case will preclude summary judgment' "].)

Considering the evidence in the light most favorable to plaintiff (*Sellery, supra,* 48 Cal.App.4th at p. 541, fn. 1), since APO Enterprises is a suspended corporation that is not a party to the lawsuit, we will assume for purposes of this appeal that plaintiff purchased the gas station business individually.

Kendrick agreed to sell plaintiff the business for approximately $300,000. In addition to paying for equipment and inventory, plaintiff paid Kendrick $150,000, and then began making monthly installment payments on the remaining $150,000. The men agreed that Kendrick would assign plaintiff his interest in the lease agreement once plaintiff made the final payment on the $300,000 total purchase price. Plaintiff never made the final payment; according to plaintiff, he still owes Kendrick approximately $150,000.

C.      Negotiations to Purchase the Real Property from Lilval

In March 2006, plaintiff and Kendrick spoke with a representative of Grupe who told them Lilval was willing to sell the property for $850,000. On April 14, 2006, two days before the lease extension notification was due, plaintiff prepared a document entitled "Option to Purchase Building." The agreement as drafted was between Lilval and Kendrick "or assignee." Neither plaintiff nor APO Enterprises are mentioned anywhere in the option agreement. Instead, plaintiff claimed Kendrick had agreed to transfer the land to him after Kendrick purchased it from Lilval.

After Kendrick signed the Option to Purchase Building document on April 14, 2006, plaintiff forwarded "the proposed written agreement" to Grupe together with a check for $100. Lilval never signed the proposed option agreement.

3

The April 16, 2006, deadline for exercising the option to extend the lease subsequently passed. Lilval never received a notice to extend the lease by that date.

On April 25, 2006, Lilval caused a document to be prepared entitled Agreement of Sale of Real Property and Joint Escrow Instructions. The proposed agreement was between Lilval and Kendrick; it does not reference either plaintiff or APO Enterprises. The agreement lists the price for the property as $1,000,000, and recites that the agreement is effective upon being executed by both parties. Kendrick signed the agreement on May 16, 2006, but Lilval did not sign the agreement.

D.     Unlawful Detainer to Remove Plaintiff from the Property

In late May 2006, defendants notified Kendrick and plaintiff that the option to renew the lease had not been exercised. Plaintiff attempted to contact Grupe to discuss the issue, but no representative would speak to him about the matter. Later, Grupe notified Kendrick and plaintiff that Lilval was now willing to sell the property for $1,500,000; otherwise, Lilval required a higher lease rate in order to continue the now expired lease. Plaintiff who, at the time, was operating the gas station business, lost the gas station business after defendants initiated an unlawful detainer action and he was evicted from the property.

E.     The Complaint and Motion for Summary Judgment

Plaintiff filed a first amended complaint against defendants alleging promissory estoppel, fraud, and breach of contract. The complaint alleged as follows: On or about March 1, 2004, plaintiff purchased an interest in the gas station from Kendrick and Kendrick assigned him an interest in the lease after which plaintiff operated the business. Under the terms of the lease, plaintiff was entitled to two options to extend the lease for three years each.

In March 2006, plaintiff spoke with a Grupe representative about buying the gas station. Plaintiff and the Grupe agent agreed that plaintiff would purchase the property

4

for $850,000. Plaintiff prepared a written "Option to Purchase Land" whereby plaintiff could purchase an option to buy the property by forwarding a signed copy of the Option to Purchase Land document along with $100. The Option to Purchase was signed on plaintiff's behalf and plaintiff forwarded the document and check to Grupe. Plaintiff did not exercise his option under the lease agreement to extend the lease, which was due April 16, 2006, because he believed he would own the real property.

In May 2006, defendants informed plaintiff that they refused to sell the property to him for $850,000, and instead demanded $1,000,000. Plaintiff agreed to the new price. In a letter dated May 25, 2006, defendants forwarded a letter to plaintiff contending he had failed to exercise his option to renew the lease and that plaintiff should contact defendants immediately if he wished to continue the lease. Plaintiff immediately called defendants and visited their business office but he was unable to speak with them. In early June 2006, defendants refused to extend the lease and refused to sell him the property for $1,000,000. Instead, defendants demanded $1,500,000 for the property, or they wanted to negotiate a higher lease rate.

Defendants successfully moved for summary judgment. Based on the admissible evidence presented on the motion, the court concluded summary judgment was proper on defendant's promissory estoppel cause of action because there was no clear promise by Lilval to sell the property to plaintiff. The court found the correspondence and communications amounted to nothing more than negotiations to possibly sell the property.

The court also concluded the element of reliance was lacking. Based on the evidence presented, the court found plaintiff was not a party to the lease agreement between Lilval and Kendrick. As a result, plaintiff could not have detrimentally relied on Lilval's purported promise to sell the property when not renewing the lease because he never had the ability or authority to extend the lease.

5

As for plaintiff's fraud cause of action, the court determined discussing the possible sale of property for a certain sum did not qualify as a misrepresentation, and that even if it did, the misrepresentation was to Kendrick, not plaintiff. For reasons similar to the promissory estoppel claim, the court found plaintiff had not justifiably relied on Lilval's purported promise to sell the property for $850,000.

The court concluded plaintiff's cause of action for breach of contract based on the lease agreement could not withstand summary judgment because plaintiff was not a party to the lease. And, the court found that even if the purported option agreements could be construed as contracts to purchase the property, they were between Kendrick and Lilval and not plaintiff.

The court entered judgment in favor of defendants. Plaintiff's timely appeal followed.

STANDARD OF REVIEW

Summary judgment is proper only when the moving party establishes that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); further section references are to the Code of Civil Procedure unless otherwise specified.) To do so, the moving party "must show either that one or more essential elements of the plaintiff's cause of action cannot be separately established or that there is an affirmative defense which bars recovery." (*Couch v. San Juan Unified Sch. Dist.* (1995) 33 Cal.App.4th 1491, 1498.) If the plaintiff fails in response to set forth specific facts showing a triable issue of material fact as to that cause of action or defense, summary judgment must be granted. (*Ibid.*; § 437c, subds. (n), (o)(2).)

"To determine whether triable issues of fact do exist, we independently review the record that was before the trial court when it ruled on defendants' motion." (*Martinez v. Combs* (2010) 49 Cal.4th 35, 68.) "We apply the same three-step analysis required of the

6

trial court. We begin by identifying the issues framed by the pleadings since it is these allegations to which the motion must respond. We then determine whether the moving party's showing has established facts which justify a judgment in movant's favor. When a summary judgment motion prima facie justifies a judgment, the final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue." (*Hernandez v. Modesto Portuguese Pentecost Assn.* (1995) 40 Cal.App.4th 1274, 1279.)

In reviewing an order granting summary judgment, we consider the evidence submitted, "except that to which objections have been made and sustained by the court, and all inferences reasonably deducible" therefrom. (§ 437c, subd. (c).) We view the evidence in the light most favorable to plaintiff as the party opposing the motion, "resolving evidentiary doubts and ambiguities in [his] favor." (*Martinez, supra,* 49 Cal.4th at p. 68.)

Defendants have not challenged the trial court's order sustaining an objection to the declaration of Dan Keyser. Therefore, we shall not consider the Keyser declaration or the evidence attached to it. (*American Continental Ins. Co.* v. *C & Z Timber Co.* (1987) 195 Cal.App.3d 1271, 1281 ["in reviewing a summary judgment, the appellate court must consider only those facts before the trial court"].)

DISCUSSION

I

*Promissory Estoppel*

We first consider plaintiff's claim that the court erred in granting summary judgment on his first cause of action for promissory estoppel. We conclude summary judgment was warranted.

Under the doctrine of promissory estoppel, " '[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a

7

third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.' " (*Toscano v. Greene Music* (2004) 124 Cal.App.4th 685, 692.) "The elements of promissory estoppel are (1) a clear promise, (2) reliance, (3) substantial detriment, and (4) damages 'measured by the extent of the obligation assumed and not performed.' " (*Ibid.*)

The crux of plaintiff's promissory estoppel claim is that in reliance on defendants' promise to sell him the property for $850,000, he did not exercise the option to extend the lease within the mandated time frame because he believed he would eventually own the property thus making an extension unnecessary. Based on this reliance, the lease was not timely extended, the lease later expired and plaintiff was eventually evicted causing him to lose the gas station business.

Even if we assume that the price negotiations as described by plaintiff qualified as a sufficiently clear promise to sell him the property for $850,000, we conclude plaintiff cannot establish the necessary element of justifiable reliance. As the trial court correctly noted, the undisputed evidence in the record shows plaintiff was not a party to the lease agreement with Lilval.

Plaintiff's own declaration opposing the motion attested to the fact that Kendrick agreed to assign him an interest in the lease only after plaintiff made the final payment under their agreement. Plaintiff's declaration provides: "Mr. Kendrick remained involved in the service station business, and we agreed that he would assign the lease agreement to me, individually, after a final payment on the business was made." Plaintiff also conceded under oath in his deposition that he never fully paid Kendrick for the gas station business. Indeed, plaintiff admitted to owing Kendrick approximately $150,000. At best, plaintiff could have asked Kendrick to exercise the option to extend the lease period which plaintiff did not do.

One can reasonably infer that Kendrick never assigned plaintiff any interest in the lease because plaintiff never finished paying Kendrick for the gas station business as

8

required by their agreement. (§ 437c, subd. (c) [court considers evidence submitted and all reasonably deducible inferences from such evidence].) A necessary corollary to this reasonable inference is that plaintiff was never a party to the lease -- meaning he never had a right to exercise the option to extend the lease. Plaintiff, then, could not have reasonably relied on defendants' purported promise to sell the property as an excuse for the lease expiring without a proper extension notification.

We would reach the same conclusion even assuming the agreement to purchase the gas station business was between Kendrick and APO Enterprises as plaintiff originally testified in his deposition. (*Jacobs v. Fire Ins. Exchange* (1995) 36 Cal.App.4th 1258, 1270 ["A court may disregard a declaration, prepared for purposes of a summary judgment motion, which conflicts with deposition testimony of the declarant"].) Regardless of whether APO Enterprises or plaintiff individually had the contract with Kendrick, it is undisputed that Kendrick was never fully paid under the agreement and that Kendrick agreed to assign his interest in the lease once final payment had been made. The result is the same.

Moreover, any reliance on Grupe's purported representation that Lilval was willing to sell the property for $850,000--without more--was inherently unreasonable. Simply put, there was no basis to believe that an unsigned "proposed" option to purchase the property in Kendrick's name, delivered to Lilval only two days before the lease period expired, meant that plaintiff did not have to take any steps to protect whatever interest he may have had in the lease, including asking Kendrick, the actual party to the lease, to exercise the option to extend. The record is devoid of any evidence that plaintiff did or would have asked Kendrick to extend the lease and that Kendrick would have done so.

"[A] party plaintiff's misguided belief or guileless action in relying on a statement on which no reasonable person would rely is not justifiable reliance. . . . 'If the conduct of the plaintiff in the light of his own intelligence and information was manifestly

9

unreasonable, . . . he will be denied a recovery.' " (*Kruse v. Bank of America* (1988) 202 Cal.App.3d 38, 54 [discussing justifiable reliance in fraud context].)  A mere "hopeful [expectation]" that plaintiff could potentially buy the property from Kendrick at some unknown future date assuming Kendrick exercised the proposed written option that Lilval never signed "cannot be equated with the necessary justifiable reliance." (*Id.* at p. 55.)

We briefly address plaintiff's contention on appeal that he and Kendrick "acted together in matters relating to the lease."  Plaintiff impliedly argues that he and Kendrick were somehow partners and that by virtue of this purported partnership, plaintiff actually did have the right to extend the lease contrary to the trial court's findings.

Nowhere in plaintiff's first amended complaint, however, does plaintiff allege that he and Kendrick were partners or that such a partnership, even assuming it existed, was ever a party to the lease agreement.  Instead, plaintiff's complaint alleges *he* was assigned an interest in the lease, that *he* agreed to buy the property from defendants for $850,000, and that *he* did not exercise the option to extend the lease because *he* believed *he* would eventually own the property out right.

Plaintiff's pleadings, and not his subsequent appellate arguments, determine the scope of issues on a summary judgment motion. (*Hernandez, supra,* 40 Cal.App.4th at p. 1279 [the pleadings determine the scope of the issues on summary judgment because the motion must respond to the allegations of the pleadings].)  Although a party may raise other matters in opposing a motion for summary judgment and seek leave to amend the complaint accordingly, plaintiff failed to do so here. (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1258 ["The complaint limits the issues to be addressed at the motion for summary judgment. . . .If a plaintiff wishes to expand the issues presented, it is incumbent on the plaintiff to seek leave to amend the complaint either prior to the hearing on the motion for summary judgment, or at the hearing itself"].)  Plaintiff's implicit argument that he had the right to extend the lease because he and Kendrick were acting together in all lease matters is therefore forfeited for purposes of appeal. (*Ibid.*

10

["To allow a party to expand its pleadings by way of opposition papers creates, as it would here, an unwieldy process"].)

## II

### *Fraud*

Plaintiff next contends summary judgment on his fraud claim was unwarranted. We disagree.

A cause of action for fraud requires a "(1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud, i.e., induce reliance; (4) justifiable reliance; and (5) resulting damage." (*Hohe v. San Diego Unified Sch. Dist.* (1990) 224 Cal.App.3d 1559, 1565.) Plaintiff's second cause of action alleges that defendants' promise to sell him the property for $850,000 was fraudulent because they never intended to sell him the property for that amount, and that he justifiably relied on this false promise in not exercising his option to extend the lease.

Like the trial court, we conclude the record does not disclose evidence which creates a triable and material issue of fact on plaintiff's fraud claim. First, the undisputed evidence shows plaintiff was never a party to the lease, and, hence, never had any right to extend the lease. Plaintiff's reliance on defendants' purported promise to sell as an excuse for the lease term expiring without a proper extension notice was therefore unreasonable.

Second, as noted above, plaintiff's reliance on the promise to sell the property was unreasonable given that the unsigned option agreement represented nothing more than a hopeful expectation that he could one day potentially buy the property. (*Kruse, supra,* 202 Cal.App.3d at pp. 54-55.) Plaintiff's misguided belief that he need not take any precautionary actions to protect the lease, such as having Kendrick submit a written notification to Lilval exercising the option to extend the lease, was simply unjustified.

11

And, for the reasons set forth above, any implied argument on appeal that plaintiff and Kendrick were somehow acting in concert and that together they had the right to extend the lease is forfeited as plaintiff never amended his complaint to allege such a theory. (*Laabs, supra,* 163 Cal.App.4th at p. 1258 [plaintiff could not raise placement or location of luminaire as basis for dangerous condition liability in opposing summary judgment where her complaint only alleged that a dangerous condition resulted from inadequate sight distance and lack of warning signs at an intersection and she did not amend her complaint prior to summary judgment hearing].)

III

*Breach of Contract*

Plaintiff finally contends the trial court erred in granting summary judgment on his breach of contract claim. Plaintiff argues a material factual dispute exists regarding whether there was an oral or written contract for Lilval to sell the real property to him for $850,000. We disagree.

Plaintiff's third cause of action for breach of contract alleges that Lilval breached the lease agreement *not* that Lilval breached some purported contract to sell the property to plaintiff. As noted above, the scope of the issues on a summary judgment motion are determined by the pleadings. (*Hernandez, supra,* 40 Cal.App.4th at p. 1279.) Plaintiff never sought to amend his complaint to allege breach of an agreement to sell him the real property for $850,000. The issue, therefore, is forfeited for purposes of this appeal. (*Laabs, supra,* 163 Cal.App.4th at p. 1258.)

To prevail on his breach of contract claim as alleged in the first amended complaint, plaintiff had to demonstrate a contract, his performance or excuse for nonperformance, the defendants' breach, and damages. (*Amelco Electric v. City of Thousand Oaks* (2002) 27 Cal.4th 228, 243.) The first step in proving his claim, then, was establishing that a contract in fact existed between himself and Lilval. Although

plaintiff's complaint alleges he too was a party to the lease between Lilval and Kendrick because Kendrick assigned him the lease in March 2004, the undisputed evidence in the record proves otherwise.

Plaintiff's declaration opposing the motion conceded Kendrick was to assign him the lease only after plaintiff paid him in full for the gas station business. Plaintiff conceded he never finished paying Kendrick for the business. As discussed above, the trial court could reasonably infer that Kendrick never assigned the lease to plaintiff given plaintiff's failure to fully pay for the business. (§ 437c, subd. (c).) Because plaintiff was never assigned an interest in the lease and was never a party to the lease with Lilval, plaintiff's breach of contract cause of action fails for want of an enforceable contract between plaintiff and defendants.

Because no triable issues of material fact remain as to any of plaintiff's causes of action, the trial court properly granted summary judgment in favor of defendants.

DISPOSITION

The judgment is affirmed. Defendants are awarded their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)


    HULL      , Acting P. J.


We concur:


    MAURO    , J.


    MURRAY    , J.

13